UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:24-cr-409-MSS-SPF

JEANTY CHERILUS  18 U.S.C. § 1343

## INDICTMENT

SEP 12 2024 PM 12:35
FILED - USDC - FLMD - TPA

The Grand Jury charges:

### COUNTS ONE THROUGH FIVE
(Wire Fraud)

#### A. Introduction

At times relevant to this Indictment:

1. JEANTY CHERILUS, a resident of the Middle District of Florida, was an owner of NATRANSUSA CORPORATION ("NATRANS"), a business that advertised to provide automobile salvage and transportation services.

2. CHERILUS, through NATRANS, submitted applications to obtain federal Paycheck Protection Program ("PPP") loans and an Economic Injury Disaster Loan ("EIDL") to which CHERILUS and NATRANS were not entitled and that included materially false and fraudulent representations and documentation.

**The Small Business Administration**

3. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses.

4. In or around March 2020, the President declared the ongoing Coronavirus Disease 2019 ("COVID-19") pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia pursuant to section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121-5207. The President also signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act and the Families First Coronavirus Response Act.

5. The SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees. In addition to traditional SBA funding programs, The CARES Act, established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak, which was declared a nationwide disaster by the President on March 13, 2020.

**Paycheck Protection Program**

6. One of the new loan programs was the SBA PPP, which was a loan designed, in part, to provide a direct incentive for small businesses to keep their workers on the payroll. Under this program, the SBA could forgive all or part of the borrowing businesses' loans provided that employees were kept on the payroll for

2

eight weeks and borrowers submitted documentation confirming that the loan proceeds were used for certain qualifying business expenses (i.e., payroll, rent, mortgage interest, or utilities).

7.  Interested applicants applied through an existing SBA lender or any other participating federally-insured financial institution. The PPP application process required applicants to submit a Borrower Application Form through an SBA-approved financial entity. The application contained information as to the purpose of the loan, average monthly payroll, number of employees, and background of the business and its owner. Applicants were also required to make certain good faith certifications, including that economic uncertainties had necessitated their loan requests for continued business operations, and that they intended to use loan proceeds only for the authorized purposes.

**Economic Injury Disaster Relief Program**

8.  One government response to the COVID-19 outbreak was an expansion of an existing disaster-related program—the EIDL—to provide for loan assistance (including $10,000 advances) for small businesses and other eligible entities for loans up to $2 million. The EIDL proceeds could be used to pay certain qualifying expenses (i.e., fixed debts, payroll, accounts payable, and other bills) that could have been paid had the disaster not occurred.

9.  EIDL funds were issued directly from the United States Treasury, and applicants applied through the SBA via an online portal and application. The EIDL application process collected information concerning the business and the business

owner. Applicants electronically certified that the information provided was accurate and were warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

10. To obtain an EIDL and advance, a qualifying business had to submit an application to the SBA and provide information about its operation, such as the number of employes, gross revenue for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. Applicants electronically certified that the information provided was accurate and were warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanction, including criminal penalties. Applicants also completed loan agreements with the SBA.

**Financial Institution**

11. Financial Institution #1 was a financial institution that had computer servers used for processing financial transactions located outside the State of Florida.

**PPP Lender**

12. Lender #1 participated in the SBA's PPP as a lender, and as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

B. <u>**The Scheme and Artifice**</u>

13. Beginning in or around June 2020, and continuing through at least in or around March 2021, in the Middle District of Florida and elsewhere, the defendant,

JEANTY CHERILUS,

4

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises about a material fact.

### C.     Manner and Means of the Scheme and Artifice

14.     The manner and means by which the defendant and others sought to accomplish the scheme and artifice included, among others, the following:

   a.     It was part of the scheme and artifice that the defendant would and did prepare and submit, and cause to be prepared and submitted, materially false and fraudulent PPP and EIDL applications to the SBA, which programs were tailored to provide benefits and relief to businesses and workers negatively impacted by the COVID-19 pandemic.

   b.     It was further a part of the scheme and artifice that, in order to induce the SBA and financial institutions to fund PPP and EIDL loans, the defendant would and did prepare and submit, and cause to be prepared and submitted, to the SBA and Lender #1 applications that contained multiple materially false and fraudulent representations and pretenses, including:

      i.     stating an inflated number of employees;

      ii.    stating an inflated average monthly payroll; and

      iii.   representing and certifying that loan proceeds would be used for business-related purposes.

c. It was further a part of the scheme and artifice that, in order to induce the SBA and financial institutions to fund PPP and EIDL loans, the defendant would and did submit fraudulent supporting documentation, including a 2019 and 2020 Form 940: Employer's Annual Federal Unemployment ("FUTA") Tax Return form.

d. It was further a part of the scheme and artifice that the defendant would and did cause the SBA and Lender #1 to approve a PPP and an EIDL loan application and cause to be transmitted PPP and EIDL loan proceeds via interstate wire transfers to Financial Institution #1.

e. It was further a part of the scheme and artifice that the defendant would and did use the PPP and EIDL funds, and cause the PPP and EIDL funds to be used, for unauthorized purposes and for his own personal enrichment and the enrichment of others.

f. It was a further part of the scheme and artifice that the defendant would and did perform acts and make statements to promote and achieve the scheme and artifice and to misrepresent, hide, and conceal the scheme and artifice and the acts committed in furtherance thereof.

### D. **Execution of the Scheme and Artifice**

15. On or about the dates set forth below in each count, in the Middle District of Florida and elsewhere, the defendant,

**JEANTY CHERILUS,**

for the purpose of executing the aforesaid scheme and artifice, knowingly and intentionally transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the writings, signs, signals, pictures, and sounds described below, each transmission constituting a separate count:

| COUNT | DATE OF WIRE | DESCRIPTION OF WIRE |
|---|---|---|
| ONE | June 30, 2020 | Defendant caused a wire transfer in the amount of $5,000 in EIDL funds, sent from outside of Florida to a Financial Institution #1 account in the defendant's name within the Middle District of Florida |
| TWO | July 28, 2020 | Defendant caused a wire transfer in the amount of $350,000 in PPP funds, sent from outside of Florida to a Financial Institution #1 account in the defendant's name within the Middle District of Florida |
| THREE | September 27, 2020 | Defendant caused a wire transfer in the amount of $15,000 in EIDL funds, sent from outside of Florida to a Financial Institution #1 account in the defendant's name within the Middle District of Florida |
| FOUR | March 16, 2021 | Defendant caused a submission of a loan application, sent from the Middle District of Florida via the Internet to servers outside of Florida |

| COUNT | DATE OF WIRE | DESCRIPTION OF WIRE |
|---|---|---|
| **FIVE** | March 20, 2021 | Defendant caused a submission of a loan application, sent from the Middle District of Florida via the Internet to servers outside of Florida |

All in violation of 18 U.S.C. §§ 1343 and 2.

## FORFEITURE

1. The allegations contained in Counts One through Five are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a violation of 18 U.S.C. § 1343, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3. The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of approximately $370,000, which represents the proceeds the defendant obtained from the offenses.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL,

███████████████

Foreperson

ROGER B. HANDBERG
United States Attorney

By: _____
Gregory D. Pizzo
Assistant United States Attorney

By: _____
Carlton C. Gammons
Assistant United States Attorney
Chief, Economic Crimes Section

FORM OBD-34
September 24

No.

# UNITED STATES DISTRICT COURT
Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

JEANTY CHERILUS

## INDICTMENT

Violations: 18 U.S.C. § 1343

A true bill,

███████████████

Foreperson

Filed in open court this 12th day of September 2024.

*Ashley Sanders*
**ASHLEY SANDERS**, Clerk

Bail $ _____

GPO 863 525